20-1857 from the District of North Dakota. John Finstead et al versus James Gord et al. All right, let's see where's Mr. There we go. Can't get Mr. Gord pinned. There we are. Mr. Schroemold for appellant. Yes, your honor. May it please the court. The Finsteads who I represent filed for Chapter 12 bankruptcy protection to deal with a pending foreclosure on their farm back in 2005. Their confirmed Chapter 12 plan allowed them to remain on the farm and continue operations under an agreement with their largest creditor, the bank holding the mortgage on the farm. A North Dakota state court in a summary judgment proceeding ruled that a deed in lieu of foreclosure given a security for the Chapter 12 bankruptcy agreement operated to transfer all of the Finsteads' interests in the farm. More importantly, the state court ruled that no other aspect of the Chapter 12 settlement agreement and the confirmed plan could be considered under a parole evidence statute unique to North Dakota. As a result of the state court ruling, the state court effectively converted this Chapter 12 into a Chapter 7. I don't think that's an accurate description of the state court decision, at least not the way I read it. They had to interpret the deed, which was part of the confirmed plan. In interpreting the effect of the deed, they looked to state law, which governs property issues. They didn't say that the parole evidence rule statute trumps anything that's in the confirmed plan. That's not the way I read the decision. The only thing they were allowed to consider under the parole evidence statute was that quick claim deed in lieu of foreclosure. There's an old case in North Dakota called Kijewski v. Bratcher, and that was the case that was relied upon to say that a deed is a contract and a parole evidence rule applies, or the parole evidence statute applies, that is, in North Dakota, to prevent consideration of any other contemporary disagreements that took place with that deed. That was the problem here. The deed in lieu, which everybody understood in the bankruptcy proceeding, including the bankruptcy court, to be just simply security, and everybody was treating this as a continuing mortgage on the property. None of that was considered in the state court. And the problem that we have with that ruling, and the reason we're here now, is because our position is that preemption, the conflict preemption in the state... Why isn't our prior decision controlling under principles of claim preclusion? Because it all goes back to this quick claim deed, which our position is that that deed, or that state court decision, is void because it's subject to a preemptive decision by the bankruptcy court. The bankruptcy court ruled that, in confirming a Chapter 12 plan, confirmed the entire plan in the entire agreement, and not just that deed. The deed was supposed to have been a peripheral part of that whole agreement. I want to interrupt you because I've got the same question, and I didn't hear a real answer. When I read our previous decision, I think that it resolves this very case about four or five ways. We have a prior panel rule we're controlled by, claim preclusion, race judicata, perhaps. I could think of some more terms. Tell me why this, our 2016 decision, doesn't control this case many, many ways. Well, because, again, our position is that the bankruptcy court ruling preempts this court judgment, and therefore avoids the state court judgment. And you could have argued that in state court, and you could have argued to our prior panel. That's what claim preclusion is all about. I understand that. The problem with saying we could have done it is that rule 18 was cited by this court in the 2016 decision. We'll call that FinSTED 2 for clarification. Rule 18 is a permissive joinder rule, and it's being used as a standard for claim preclusion. In other words, saying if you could have brought the claim under rule 18, you should have brought it, and therefore you're precluded. And I think there's a due process issue with that, because there's, rule 18 seems to allow. Okay. Wait a minute. What's your authority? What's your judicial authority for this due process problem? Well, I'm just saying it doesn't provide notice. This court has ruled that under rule 18, and I'll give you a case site. It's 828 Fed 2nd, 1272 at page 1275, case called Headley v. Bacon, has ruled that under rule 18, you don't have to bring all your claims at once. And for strategic reasons, you can leave a claim out, and it's not res judicata. Well, maybe once, but two or three times. You know what our previous decision says. And the other thing I would point to, pardon me. Counsel, our previous decision says the final resolution of that issue by the North Dakota courts is binding. It's all subsequent litigation. And we rule that. Why doesn't that control almost all your arguments, that simple sentence? Yeah. Excuse me, your honor. You broke up there for a second. I didn't. Okay. Well, I'll say it one more time. I'll say it slowly. Okay. There's a sentence in our previous case. The final resolution of that issue by the North Dakota courts is binding in subsequent litigation between the Finstads and the Gords. And there are three or four other sentences like that. There's a longer sentence that says that too. Why doesn't that control this case? Because again, our position is that the bankruptcy decision preempts that state court decision. All of this goes back to the state court. Wait, counsel. When we wrote those words, this court agreed with the North Dakota Supreme Court. And to put it in your terms, I don't think this is true, but put it starkly in your terms and not the bankruptcy court. We agreed with the North Dakota courts. That is correct. And if that is, if that, I mean, I would concede that if issue preclusion is the primary issue here, then we're probably dead in the water. But that is not what we're trying to argue here. Wait, wait, counsel. You just said issue preclusion. I thought claim preclusion was agreed. Everybody agreed this was a claim preclusion situation. Well, I would, what Judge Benton asked was probably a case that would involve issue preclusion because he's speaking of the resolution of a specific issue. And, and so, I mean, if that is the decision of the court, I mean, if that's where we're, if that's where we are, have a big problem here. The problem that I have with all of these decisions though, is that again, the bankruptcy court decision should have preempted this under the supremacy clause so that you have to go back to the state court decision and say that that was a void decision. And it, and it would follow all the way up the chain that these other decisions are, are, are moot basically. And I, what we're asking is that, that, that the bankruptcy, the bankruptcy court under section 105 of the bankruptcy code does have equitable authority to correct this situation. There's, there's a, the injustice that happened here resulted from the fact that the Finsteads ended up giving away all of their land and all of their money because they paid, get this farm paid off which was never the intent of anybody involved in that bankruptcy, including the bankruptcy court. And it doesn't make sense in a chapter 12 bankruptcy that would, we're asking this court to remand this case to the bankruptcy court to allow the equitable remedies to, to be pursued. Does there have to be a change in circumstance for that equitable remedy to be available in the bankruptcy? Well, I, I think this, this, this is a change in circumstance. Well, you're saying it's not, you're saying that it's, it's, it's been misunderstood from the very beginning. And that is, that is correct. If the bankruptcy court made a mistake, for example, or all the parties in the bankruptcy made a mistake in, in trying to put forth this agreement that was in fact a transfer of the property, that is something the bankruptcy court could remedy because they could reform the agreement. They could reform this deed, in fact, if they had to. But the bottom line is they can, they could adjust the rights of all of the parties, including the guards here to, to be fair and equitable under the circumstances. This, again, this case resulted in an extreme injustice to my client because nobody, nobody contemplated this transfer of property. And that was, that, that, that's what we're here trying to remedy. I, I see my time. I was planning to reserve about three minutes for rebuttal. So I, um, I see my time is about up. So unless anybody else. Very good. I'll reserve the rest of my time. Thank you, Your Honor. May it please the court, counsel. My name is Mike Goss and I'm appearing today on behalf of the appellees in this matter. James and Wendy Gordon. This case is the culmination of nine years of litigation between the parties. It started in 2006 when the appellants made their decision to bring a state court action to assert what they alleged to be their rights pursuant to a confirmed chapter 12 plan out of the United States bankruptcy court in North Dakota. A plan that undisputedly incorporated the settlement agreement between the appellants and Beardsford bank into the terms of that confirmed plan. After they lost at the state court level, they took it to the North Dakota Supreme Court and lost. And then, uh, not being dismayed by those results filed an action in the United States district court for the district of North Dakota and lost. And as this court noted earlier, brought it to the 8th circuit and lost. And you still not dismayed by the results of the actions that they've had to get now to the bankruptcy court, a division of the district court in North Dakota where they lost, lost at the bat. And we are asking that the court put the final nail in the litigation coffin here and uphold the ruling of the bankruptcy appellate panel and dismiss the appellant's actions. This court has already noted it spot on. Their decision from 2016 address these issues as Judge Benton quoted the decision, uh, you know, this was brought in North Dakota state court. Ironically, the appellant's largest argument, biggest argument appears to be that the state court did not have jurisdiction to do what it decided to do. Well, there's no doubt that under the case law uniformly held throughout the United States, state courts and bankruptcy courts have concurrent jurisdiction to look at, analyze, interpret confirmed chapter 11 chapter 12 and chapter 13 plans in bankruptcy because uniformly held throughout the entire United States, that confirmed plan becomes a contract between the parties, between the debtor and their creditors as to how those debts will be repaid. And so courts across the country uniformly hold that state courts have as much ability to interpret those contracts as bankruptcy courts do for the confirmed plan. All we're asking this court to do is agree with those courts. And so because the appellants made their decision to bring it into state court and raise the only, only the claims that they decided to raise in that action. Now, coming back for a second or third or fourth bite at the apple, as this court already addressed, not only are the claims that they brought precluded, but also any claims that they could have brought are precluded. And for that matter, the entire case should be decided on those grounds and the case should be dismissed. Now, it's probably not that simple, but I do want to address the appellant's argument that in the event collateral estoppel doesn't apply here, that Rooker Feldman doesn't apply. This is squarely within the purview of the Rooker Feldman doctrine. As the court is well aware, Rooker Feldman precludes state court losers from taking their action. Now, counsel, let me stop you. You just said in case collateral estoppel doesn't get the job done. But your brief argues that this is a claim preclusion situation. I apologize, Your Honor. I misspoke. In the event that the court does not rule that claim preclusion... And the Supreme Court has told us, has scolded us repeatedly for not deciding cases that can be decided on the basis of preclusion on that basis. Your Honor, I misspoke. So why do we have to mess with the BAPS alternative ground respecting Rooker Feldman, which I find not an easy question. With all due respect, Your Honor, I agree with you that I don't think you do need to. I think this should be decided solely on the issue of claim preclusion, and the court can rest at that. Counsel, does our previous decision cite Rooker Feldman? It does not, Your Honor. Okay. That was an alternative argument raised in the bankruptcy court that I believe actually Judge Hastings, just procedurally, if I can step back one moment. The gourds originally made a motion to dismiss, responded to by the appellants, oral argument was heard in the bankruptcy court. And then at that time, counsel for the appellants raised various other arguments, including Rooker Feldman, and the bankruptcy court allowed us to brief those issues at their request we briefed those issues. So that's the only reason why it was brought up in this case. But going to the appellant's other argument, section 105 of the bankruptcy code. Section 105 allows bankruptcy courts to cure defects which are discovered in a confirmed plan. But this plan has no defect in it. Everybody acknowledges, and in fact, the appellants acknowledge that it was part of the confirmed plan by way of the settlement agreement that they would give a quick claim deed to Bearsford Bank. They did that. And as they acknowledge in their complaint, based upon the terms of the settlement agreement, ultimately, Bearsford Bank was allowed to record that quick claim deed. So there's no- Is it true that all of the parties at the beginning really did not intend that to happen? That they did intend to have this as what they've described as a continuing mortgage? Yeah, I think that's an inappropriate summary of what the parties expected. What the parties expected was the settlement agreement that they reached, that the bankruptcy court back in 2006 ultimately made a part of their confirmed plan. And in that settlement agreement, the appellants were obligated to do certain things, make certain decisions by certain date certain. They defaulted under that. And as a remedy for their settlement agreement, they were allowed to- they allowed Bearsford Bank, as part of that settlement agreement, to take that quick claim deed and file it. In North Dakota, as the North Dakota Supreme Court cited to in their decision, a quick to transfer real estate. And I understand. I understand how the North Dakota state court resolved that. I just understood, based on both parties' presentations, that maybe there was some confusion early on that that was not necessarily the intent. Even the bank, someone from the bank saying, no, we didn't intend that to be the result either. And I was just wondering as for a factual background. You know, I think I think everybody involved understood that the quick claim deed would be held in order to make sure that the gourds did what they were supposed to do under the settlement agreement. And because there is no defect in the Chapter 11 plan, there's no defect in the settlement agreement between the bank and the appellant. And there's no defect on the North Dakota state law in the quick claim deed. There was no basis for the bankruptcy court to go to Section 105 and cure, use that provision to cure a defect. Because quite simply, there was no defect. As counsel argued, they're not asking the bankruptcy court to use 105 to cure a defect. They are asking the court to go back 15 years now and equitably change what the terms of the Chapter 11, or excuse me, Chapter 12 plan was. That is not an appropriate use of Section 105. May I please, the court, although I do recognize I have time remaining, I think the court is well aware of the position. It's the second time the court has heard this argument. And as much as my appellant advocacy teachers in law school will be rolling over right now with me leaving this time on, claim preclusion is ultimately fatal to the appellant's case. And Section 105 should not be invoked. So unless the court has any further questions, I would not use the rest of my remaining time. Very good. Counsel for rebuttal? Are you muted, counsel? No, I'm back on, Your Honor. I'm sorry. I'm in the, I'm actually in the Eighth Circuit courtroom in the middle of this. Network is kind of breaking up here. So I just wanted to address a couple of things. Judge Kelly asked about, you know, what had happened in this initial agreement. And she referenced a bank person. That was Frank Farrar, the owner of the bank who wrote, there's a letter in the record. I think it's what you're referring to, where he was responding to a question by the Cattlemen's Association as to what the nature of this deed was that appeared to transfer the property. And he pointed out that this was supposed to be a financing vehicle. This was still a mortgage. In fact, Beersford had mortgages that were recorded. They never took those off the record after the quit claim, or excuse me, the quiet title proceeding was commenced. So they were recorded mortgages on that property by the bank, even though there was this deed that was given to the bank. So the point is nobody in that bankruptcy proceed viewed this as an outright transfer of that property. And it wouldn't make sense to do that anyway in a Chapter 12 bankruptcy, as we said. There was, just to clarify one other thing. When did the Gord's make the loan that helped your clients keep the settlement, comply with the settlement agreement? That's sometime during the bankruptcy. October 2006, is that correct? Yes. And the bankruptcy was started in 2005 and was discharged was given in 2008. That's six months after, counsel, that's six months after the plan was confirmed. The Gord's come on the scene as rescuers. I have an understanding of everybody. They come on the scene as rescuers to keep the settlement alive. And well. Well, they were to have been given a second mortgage on the property. That was the understanding that everybody had. And that is true. Understanding when? Wait a minute. When? You're talking about what everybody always knew in the leading up to the confirmation of the plan. The Gord's weren't even in the picture, were they? No, they weren't at the time of the filing. Nobody had any contemplation about anything vis-a-vis the Gord's. The Gord's understood that the Finsteads owed this mortgage, that they owed this money to the bank, and the Gord's were to be given a second mortgage on that property. They knew that. So there was no question about what the situation of that property was. A second mortgage to Beersford, who then sold the farm to Gord's, right? Well, our position is that they transferred their interest in this agreement to the Gord's. Beersford just gave the Gord's a quit-claim deed. And so whatever interest they held was... Okay, I understand.  Time's up. The time's up. Case has been thoroughly briefed and argued again, and we'll take it under advisement. Thank you, Your Honor.